# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JACQUELINE PARSONS BUSSARD,**

**Plaintiff,**

**v.**                                                    **Case No:   6:13-cv-1953-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

---

# MEMORANDUM OF DECISION

Jacqueline Parsons Bussard (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB").   Doc. No. 1.   Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) not finding certain impairments to be severe; 2) finding her skin impairment does not meet or equal Listing 8.05; 3) assigning little weight to the opinions of her treating physician, Dr. Richard Dycus; 4) finding her testimony concerning her pain and limitations not credible; and 5) not including all of her limitations in her residual functional capacity ("RFC") determination.   Doc. No. 20 at 11-27.   Claimant argues that the matter should be reversed for an award of benefits, or, in the alternative, remanded for further proceedings.   *Id*. at 27.   For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY.

On August 25, 2011, Claimant filed an application for a period of disability and disability insurance benefits ("DIB") alleging disability beginning on February 15, 2009.   R. 16, 51, 119-

20.   Claimant last met the insured status requirements of the Social Security Act on September 30, 2010.   R. 18.   On September 24, 2012, the ALJ held a hearing in this matter, at which Claimant and her representative were present.   R. 31-45.   On October 25, 2012, the ALJ rendered a decision finding that Claimant was not disabled "at any time from February 15, 2009, the alleged onset date, through September 30, 2010, the date last insured."   R. 16-23.   Claimant appealed the ALJ's decision to the Appeals Council.   On November 14, 2013, the Appeals Council denied Claimant's request for review.   R. 1-3.

## II.   THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.   *See* 20 C.F.R. §§ 404.1520(a).   In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity.   At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.   At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience.   If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work.   At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted).   The steps are followed in order.   If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

III.    **STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider evidence detracting from evidence on which the Commissioner relied).   The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"   *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

IV.    **ANALYSIS.**

As an initial matter, the Court stresses the fact that Claimant only applied for an award of DIB.   R. 119-20.   For DIB claims, a claimant is eligible for benefits where he or she demonstrates

disability on or before his or her date last insured ("DLI"). *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Therefore, Claimant was required to demonstrate that she was disabled on or before September 30, 2010. *Id.* Bearing this in mind, the Court turns to Claimant's arguments.

### A.  Step Two.

At step two of the sequential evaluation process, the ALJ found that Claimant only suffered from a severe impairment of eczema through her DLI. R. 18. Claimant argues that the ALJ erred by not finding "additional manifestations of [her] eczema/dermatitis impairment" to be severe. Doc. No. 20 at 11-14. Claimant also argues that the ALJ erred by not finding her cardiovascular, gastroenterological, and musculoskeletal impairments to be severe. *Id.* at 11, 13-14.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits a claimant's ability to perform basic work activities. *Id.* at § 404.1521(a).[1] An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an claimant's ability to work. *See Id.* at § 404.1521.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination

---

[1] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. § 404.1521(b).

process.   42 U.S.C. § 423(d)(2)(B).   The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).   Accordingly, the ALJ must make it clear to the reviewing court that he or she has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.   *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.

A mere diagnosis is insufficient to establish that an impairment is severe.   *See Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002).   "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id*. (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).   A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on his or her ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987) (per curiam).

As previously mentioned, the ALJ found that Claimant only suffered from a severe impairment of eczema through her DLI.   R. 18.   Without citation to any authority, Claimant maintains that the ALJ's finding is not sufficiently definite, suggesting that the ALJ should have articulated whether her eczema caused severe exertional, postural, and manipulative impairments. Doc. No. 20 at 12-14.   There is no requirement that the ALJ's finding at step two must be so detailed.   *See* 20 C.F.R. § 404.1520(a)(4)(ii) (simply requiring the existence of a severe impairment in order to move onto the next step in the disability evaluation process).   Instead, the detail findings Claimant advocates for at step two, are reserved for step four of the sequential

evaluation process, where the ALJ considers all of the evidence in formulating Claimant's RFC.

*See, e.g.*, *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 916 (11th Cir. 2013) (recognizing

that "the Commissioner's policy *requires* ALJs to be more detailed in evaluating a claimant's RFC

at step four than in assessing the severity of mental impairments at steps two and three.") (citing

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).[2]   Accordingly, the ALJ's

determination that Claimant suffered from a severe impairment of eczema through her DLI was

sufficient to satisfy step two of the sequential evaluation process.

Next, Claimant argues that the ALJ erred by not finding her cardiovascular,

gastroenterological, and musculoskeletal impairments to be severe.  Doc. No. 20 at 11, 13-14.

The Court disagrees.   First, Claimant presented no evidence that she suffered from a

cardiovascular impairment during the relevant time period.  *See* R. 31-45, 170, 175-76, 182-84,

186.[3]   Therefore, there was no cardiovascular impairment to consider at step two of the sequential

evaluation process.   Second, the only evidence of gastroenterological and musculoskeletal

impairments during the relevant time period appear in treatment notes dated September 9, 2009

and May 27, 2010.  R. 170, 175.[4]  These treatment notes, though, provide no insight into how

these impairments affected Claimant's ability to perform basic work activities.  *Id.*  Likewise,

Claimant presented no testimony at the hearing regarding these impairments, nor did Dr. Dycus

opine that Claimant suffered any limitations as a result of these impairments.  *See* R. 31-45, 182-

84.  Based on this record, Claimant failed to demonstrate that these impairments significantly

---

[2] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[3] The record reveals that the first diagnosis of a cardiovascular impairment occurred after Claimant's DLI, on December 15, 2010.  R. 169.

[4] Specifically, Claimant was diagnosed with gastroesophageal reflux disease ("GERD") on both occasions, and diagnosed with a thoracic muscle sprain on September 9, 2009.  R. 170, 175.

limited her ability to perform basic work activities.   Therefore, the ALJ committed no err at step two with respect to Claimant's gastroenterological and musculoskeletal impairments.

Finally, Claimant argues that the ALJ erred by not considering her eczema, cardiovascular, gastroenterological, and musculoskeletal impairments at the later steps of the sequential evaluation process.   Doc. No. 20 at 14.   The ALJ must consider the claimant's entire medical condition, including non-severe impairments, when addressing steps three and four of the sequential evaluation process.   *Jamison*, 814 F.2d at 588.   Since Claimant did not suffer from any cardiovascular impairments during the relevant period, there was nothing for the ALJ to consider in terms of such impairments at steps three and four of the sequential evaluation process.   At step three, the ALJ found that Claimant "did not have an impairment or combination of impairments" that met or medically equaled the severity of one of the listed impairments.   R. 18.   The Eleventh Circuit has determined that this finding sufficiently demonstrates that the ALJ considered the combined effects of the claimant's impairments at step three of the sequential evaluation process. *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002).   Likewise, at step four, the ALJ noted that she carefully considered the "entire record" in determining Claimant's RFC, including all of Claimant's symptoms.   R. 18-19.   Courts in the Eleventh Circuit have found such findings sufficiently demonstrate that the ALJ considered the combined effects of the claimant's impairments at step four of the sequential evaluation process.   *See, e.g.*, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013); *Payne v. Colvin*, 2015 WL 260716, at *4 (N.D. Ala. Jan. 15, 2015); *Hutson v. Colvin*, Case No. 3:12-cv-25-J-JRK, 2013 WL 1104879, at *4 (M.D. Fla. Mar. 18, 2013) (citing *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010)).   In light

of the foregoing, the Court finds that the ALJ considered Claimant's gastroenterological and musculoskeletal impairments at the later steps of the sequential evaluation process.[5]

### B.  Listing 8.05.

At step three of the sequential evaluation process, the ALJ found that Claimant did not meet or equal any of the impairments contained in the Listing of Impairments (the "Listings").   R. 18.   Claimant argues that the ALJ erred in making this finding without first having obtained an updated medical expert opinion regarding medical equivalency pursuant to Social Security Ruling ("SSR") 96-6p.   Doc. No. 20 at 17-18.   Claimant further argues that substantial evidence supports a finding that she meets or equals Listing 8.05.   *Id.* at 16-17.

At step three of the sequential evaluation process, the ALJ must consider whether a claimant's impairments, individually or in combination, meet or equal any of the Listings.   The Listings identify impairments which are considered severe enough to prevent a person from engaging in gainful activity.   20 C.F.R. § 404.1525(a).   By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of his or her age, education, or work experience.   *Id.*   Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings

---

[5] Even if the Court were to assume the ALJ did not consider Claimant's gastroenterological and musculoskeletal impairments at the later steps of the sequential evaluation process, any resultant error is harmless because there is absolutely no medical, opinion, or testimonial evidence that Claimant suffered from any functional limitations as a result of her gastroenterological and musculoskeletal impairments.   *See, e.g.*, *Torres v. Astrue*, 2012 WL 621707, at *2 (M.D. Ga. Feb. 2, 2012) ("harmless error doctrine essentially dictates that if remand for the correction of an error would not change the outcome ... such error is deemed harmless."); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

and the duration requirement." *Wilson*, 284 F.3d at 1224.   To "equal" a Listing, the medical findings must be "at least equal in severity and duration" to the listed findings.   *See* 20 C.F.R. § 404.1526(a).   Where a claimant has alleged several impairments, the ALJ is required to consider the impairments in combination and to determine whether the combined impairments are medically equivalent to a listed impairment.   *See Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).   Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In order to meet or medically equal Listing 8.05, Claimant must demonstrate the she has dermatitis or a similar skin impairment "with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."   20 C.F.R. Part 404, subpart P, Appendix 1 § 8.05.[6]   Extensive skin lesions is defined as "those that involve multiple body sites or critical body areas, and result in a very serious limitation."   *Id*. at § 8.00(C)(1).[7]   Persist is defined as a "the longitudinal clinical record show[ing] that, with few exceptions, [the claimant's] lesions have been at the level of severity specified in the listing."   *Id*. at § 8.00(G).

Claimant argues that the ALJ erred in determining that she did not meet or equal Listing 8.05 without first having obtained an updated medical expert opinion regarding medical equivalency pursuant to SSR 96-6p.   Doc. No. 20 at 17-18.   The regulation on which Claimant relies states, in relevant part:

---

[6] Examples of skin impairments similar to dermatitis are psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, and allergic contact dermatitis.   *Id*. at § 8.05.

[7] Examples of extensive skin lesions include but are not limited to: 1) skin lesions that interfere with the motion of joints that very seriously limit the use of more than one extremity (i.e., two upper extremities, two lower extremities, or one upper and one lower extremity); 2) skin lesions on the palms of both hands that very seriously limit the ability to do fine and gross motor movements; or 3) skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit the ability to ambulate.   *Id*. at § 8.00(C)(1)(a-c).

> When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.   However, an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> • When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> • When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996).[8]   Claimant does not specify which of the foregoing situations apply.   *See* Doc. No. 20 at 18.   Regardless of which situation applies, both indicate that the ALJ is not required to obtain an additional medical opinion from a medical expert unless the ALJ is of the opinion that the record evidence supports a finding of equivalence or that such additional evidence may change an existing state agency opinion.   SSR 96-6p, 1996 WL 374180, at *3-4.   As discussed below, the medical evidence from the relevant time period demonstrates that Claimant's impairments, alone and in combination, do not meet or medically equal Listing 8.05.   Claimant has not demonstrated that the ALJ abused her discretion by not obtaining an additional opinion.   Doc. No. 20 at 18.   Therefore, the Court finds that the ALJ did not abuse the discretion afforded to her in SSR 96-6p.

---

[8] The Eleventh Circuit has stated "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.   Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference[.]"   *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citations omitted).

Next, Claimant argues that the ALJ erred in determining that she did not meet or equal Listing 8.05, because substantial evidence supports a finding that she does meet or equal Listing 8.05.   Doc. No. 20 at 14-17.   The Court's analysis, however, is not focused on whether substantial evidence supports a finding that Claimant meets or equals Listing 8.05.   *E.g.*, *Stanton v. Astrue*, 617 F. Supp. 2d 1205, 1219 (M.D. Fla. 2008).   Instead, the Court must determine whether the ALJ's determination that Claimant does not meet or equal Listing 8.05 is supported by substantial evidence.   *Id.*   The record contains four (4) treatment notes dated prior to Claimant's DLI.   These treatment notes, dated August 21, 2007, January 21, 2009, September 9, 2009, and May 27, 2010, contain exam findings of dry skin and diagnoses of eczema and dry skin. R. 170, 175-76, 186.   These treatment notes, however, do not describe the existence of extensive skin lesions as defined by the regulations, or that Claimant suffered from extensive skin lesions for a period of at least three (3) months.   *Id.*   Though the record also contains opinions from Claimant's treating physician, Dr. Dycus', concerning the nature of Claimant's eczema and resultant impairments, the ALJ, as discussed below, appropriately assigned these opinions little weight.   *See infra* pp. 12-15.   Moreover, these opinions do not demonstrate that Claimant meets or equals Listing 8.05.   *See* R. 182-84.[9]   In light of the foregoing, the Court finds that the ALJ's determination that Claimant does not meet or equal any listed impairments, including Listing 8.05, is supported by substantial evidence.

### C.  Dr. Dycus.

Claimant argues that the ALJ erred in assigning Dr. Dycus' opinions little weight.   Doc. No. 20 at 22-24.   Weighing the opinions and findings of treating, examining, and non-examining

---

[9] For example, while Dr. Dycus states that Claimant has suffered from eczema for "many years," there is nothing in his opinion indicating that Claimant's eczema has resulted in extensive skin lesions that have persisted for at least three (3) months.   R. 182.

physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   In *Winschel*, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.   *Id.* at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"   *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight.   *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) (quoting *Phillips*, 357 F.3d at 1240-41).   Thus, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records.

On May 22, 2012, Dr. Dycus wrote a letter addressing Claimant's eczema and completed a Medical Source Statement (the "Assessment").   R. 182-84.[10]   In his letter, Dr. Dycus explains

---

[10] Although the ALJ questioned whether Dr. Dycus qualified as a treating physician, she analyzed Dr. Dycus' opinions as though he was a treating source.   *See* R. 19-21.   Accordingly, the Court will presume Dr. Dycus is Claimant's treating physician.

that Claimant "has suffered for many years from severe eczema" and has been treated with multiple medications.   R. 182.   At some unspecified point in time, Claimant was prescribed oral prednisone, which effectively treated her eczema.   *Id*.   However, Dr. Dycus explains that Claimant was eventually taken off of prednisone because she was suffering from common side effects of long term prednisone use, including facial swelling and weight gain.   *Id*.   Dr. Dycus opines that the cracking and tightening of the skin associated with Claimant's eczema "significantly" limits her ability to perform "basic movements with her hands," thus rending her disabled.   *Id*.   In the Assessment, Dr. Dycus opines that Claimant's eczema renders her incapable of lifting or carrying any amount of weight, or reaching, handling, and fingering with either upper extremities.   R. 183-84.   Dr. Dycus opines that these extreme limitations have "existed and persisted" since at least May of 2007.   R. 184.[11]

At step four of the sequential evaluation process, the ALJ determined that Claimant had a RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [S]he should avoid direct contact with water, chemicals, food, and concentrated exposure to temperature extremes.   She should not perform jobs requiring work with dangerous machinery or at heights.   The claimant should work independently at an independent workstation and should have no more than occasional physical contact with co-workers and supervisors, but no physical

---

[11] The letter and Assessment were the only opinions from Dr. Dycus in the record at the time the ALJ rendered her decision.   After the ALJ's decision, on November 20, 2012, Dr. Dycus completed a document entitled "Residual Functional Capacity to Upper Extremity."   R. 190-95.   Given the timing of this opinion, the ALJ did not have an opportunity to weigh it, and therefore could not have committed any error with respect thereto.   Claimant, though, submitted Dr. Dycus' November 20, 2012 opinion to the Appeals Council.   R. 4.   However, the Appeals Council denied Claimant's request for review.   R. 1-4.   Claimant does not challenge the Appeals Council's denial, and therefore has waived the issue.   *See, e.g., Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (refusing to consider an argument that the claimant failed to raise in the district court).   In any event, the Court finds that Dr. Dycus' November 20, 2012 opinion does not render the denial of benefits erroneous as the opinion is conclusory in nature and otherwise not supported by the medical evidence from the relevant time period.   *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.").

- 13 -

contact with the public.

R. 18-19.   In reaching this RFC, the ALJ considered Dr. Dycus' May 22, 2012 letter and

Assessment and assigned them little weight, explaining:

> Dr. Dycus's assessment is inconsistent with the medical evidence, which documents only one diagnosis and treatment for eczema after the alleged onset date and prior to the date last insured. Specifically, Exhibit 2F shows claimant was seen for eczema in May 2010 and was treated with prescribed ointments.   Prior treatment records in January and September 2009 do not establish diagnosis for eczema and indicate only that she was treated for dry skin. Additionally, the assessed exertional and manipulative limitations are inconsistent with claimant's normal physical examination revealing full musculoskeletal range of motion of the upper and lower extremities.     Similarly, the assessed limitations are inconsistent with her testimony and self-report that she cared for her father in law who was infected with MRSA.   Specifically, she testified that she provided daily assistance with dressing, obtaining meals and drinks, and ensuring medications were taken.   Notably, the tasks identified by the claimant require some ability to lift and carry objects as well as the ability to reach and handle, which is inconsistent with Dr. Dycus's assessed limitations.   Moreover, if claimant suffered from ongoing cracking skin and open wounds, as suggested by Dr. Dycus, it would seriously compromise claimant's health by tending closely to a MRSA patient.
>
> Dr. Dycus opines that claimant cannot use her hands.   This limitation is without merit.   Claimant testified that she drives, shops for groceries, prepares simple meals, tends to her personal care (bathing, dressing, grooming), makes her bed, picks up around the home, drives her grandson to the bus stop, took care of an ill family member for a year, drives to and attends doctor visits, and drives to her sister's home for visits.   There is no evidence in the file that claimant cannot feed herself, apply deodorant, brush her teeth, use items such as a telephone, television remote control, or other similar items that individuals handle on a daily basis.   Therefore, claimant is using her hands daily and often throughout the day.   The medical evidence contains only three doctors' visits prior to the DLI for eczema, and there is no evidence of ongoing prescriptions for prednisone, which claimant testified made her swell up "so bad from the steroids that she couldn't breathe," yet there are no records to support this.

R. 19-20 (internal citations omitted).   Accordingly, the ALJ assigned "little weight" to Dr. Dycus'

opinions because they were inconsistent with the medical record and Claimant's testimony.   R. 19-21.   Additionally, the ALJ gave little weight to Dr. Dycus' opinion that Claimant is disable because that is a decision reserved to the Commissioner.   R. 21.

The ALJ articulated good cause for assigning Dr. Dycus' opinions little weight.   The ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.   20 C.F.R. § 404.1527(d)(1).   Therefore, the ALJ properly gave little weight to Dr. Dycus' opinion that Claimant is unable to work, because such a determination is reserved to the Commissioner.   *See Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)).   Furthermore, the limited medical record and Claimant's reported activities of daily living are, as the ALJ explained, grossly inconsistent with the severe functional limitations identified in Dr. Dycus' letter and Assessment. R. 19-21.   Accordingly, the Court finds that the ALJ articulated good cause for assigning Dr. Dycus' opinions little weight.

### D.  Credibility.

Claimant argues that the ALJ's credibility determination it is not supported by substantial evidence.   Doc. No. 20 at 24-27.   In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.   By this standard, there must be: 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or 3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).   "20 C.F.R. § 404.1529 provides that once such an impairment is

established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[12]   Thus, once the pain standard is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id*. at 1561-62; *see also* SSR 96-7p, 1996 WL 374186, at *2 ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'").   A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562.   The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case.   *Id*.

At step four of the sequential evaluation process, the ALJ found that Claimant's impairments could reasonably be expected to cause her alleged symptoms, but concluded that

---

[12] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."   SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

Claimant's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not credible to the extent it was inconsistent with her RFC determination.   R. 20.   In support, the ALJ stated the following:

> In terms of the claimant's alleged impairment, the [ALJ] considered the claimant's allegations of significantly impaired functioning to do basic work, including her statement that she is "allergic to water." The medical evidence documenting minimal treatment for the alleged condition fails to support the claimant's allegations. Specifically, the evidence does not contain any medical records documenting the claimant's response to treatment with ointments, moisturizers, and restriction from excessive scratching.   No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.
>
> Additionally, the claimant has numerous activities, which are inconsistent with the total inability to work, including driving her grandson to the bus, shopping in stores for groceries, visiting with her sister, and caring for her sick father in law.   Subjective complaints are subject to being discounted if there are inconsistencies in the evidence as a whole.   Consequently, the [ALJ] finds that the claimant is not fully credible regarding her symptoms, functional limitations, or inability to engage in work activity on a consistent and sustained basis.

R. 20-21 (internal citations omitted).   Accordingly, the ALJ found Claimant's testimony concerning the intensity, persistence, and limiting effects of her symptoms not credible due to Claimant's activities of daily living and the lack of any medical records documenting functional limitations during the relevant period.   *Id.*

Claimant argues that the ALJ inappropriately relied on Claimant's activities of daily living in rendering her credibility determination.   Doc. No. 20 at 25.   The Court disagrees.   The ALJ may consider the claimant's daily activities when evaluating his or her subjective symptoms, but the claimant's admission that he or she participates in daily activities for short durations does not

necessarily preclude a finding that he or she is disabled.   20 C.F.R. § 404.1529(c)(3)(i); *see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (noting that the claimant's successful completion of a six-minute treadmill exercise was not necessarily indicative of his ability to work, and the fact that he did housework and went fishing was not inconsistent with the limitations recommended by his treating physicians).   Here, the ALJ identified several activities Claimant testified to performing during the relevant time period, which are, as the ALJ found, inconsistent with the limitations Claimant described during her testimony.   R. 21.   Accordingly, the Court finds that the ALJ appropriately relied on Claimant's activities of daily living in determining her credibility.

Next, Claimant challenges the ALJ's reliance on the medical record in rendering her credibility determination.   Doc. No. 20 at 26.   In doing so, Claimant does not challenge the probative value of the medical evidence on which the ALJ relies, but rather collaterally attacks the ALJ's reasoning by arguing that she failed to develop the record.   *Id.* at 26-27.   The Court disagrees for two (2) reasons.   First, the limited medical evidence on which the ALJ relies is highly probative of Claimant's credibility.   The medical evidence from the relevant time period, which consists of only two (2) treatment notes, contains relatively unremarkable physical examinations, no mention of functional limitations, and demonstrates that Claimant's eczema was treated with a conservative treatment of ointments and moisturizer.   R. 170, 175.   These relatively unremarkable treatment notes stand in stark contrast to Claimant's description of severe limitations caused by her eczema.

Second, the limited medical record is not indicative of a failure to develop a full and fair record.   The ALJ has a basic obligation to develop a full and fair record.   *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Cowart*, 662 F.2d at 735).   This obligation

requires the ALJ to develop the claimant's complete medical history for at least the twelve (12) months preceding the month in which the application was filed, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), and order a consultative examination when such an evaluation is necessary to make an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988). Here, the ALJ had a basic duty to develop the record, and thus was only required to develop Claimant's complete medical history from August of 2010 to August of 2011, the date Claimant filed her application for DIB. *Ellison*, 355 F.3d at 1276. The Court finds that the ALJ satisfied this duty. Indeed, this fact is evidenced by Claimant's failure to cite any particular medical records or information not contained within the record, as well as Claimant's failure to articulate why the ALJ should have ordered a consultative examination. *See* Doc. No. 20 at 14, 26-27; *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (explaining that remand for development of the record is appropriate where the record contains evidentiary gaps which result in unfairness or clear prejudice). Ultimately, Claimant must bear the responsibility and the consequences for the limited medical record, as it was her burden, not the ALJ's, to produce the medical evidence supporting her claim for disability. *See, e.g.*, *Moore*, 405 F.3d at 1211; 20 C.F.R. § 404.1512(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 404.1512(c) (stating "[y]our responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled"). Since the ALJ satisfied her duty to develop a full and fair record, she could appropriately rely on the limited medical record as a reason to discredit Claimant's testimony concerning the severity of her impairments. In light of the foregoing, the Court finds that the ALJ articulated good cause for discrediting Claimant's testimony and that her reasons are supported by substantial evidence. *See*

*Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

### E.   RFC.

Claimant argues that the ALJ erred by not including manipulative, exertional, and postural limitations in her RFC determination.   Doc. No. 20 at 18-22.   At step four, the ALJ must determine the claimant's RFC and ability to do past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1527(d-e).   The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).   "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before expressing the claimant's RFC in terms of exertional levels of work.   SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).   The ALJ must consider all of the claimant's medically determinable impairments, even those not designated as severe, when determining the claimant's RFC.   20 C.F.R. § 404.1545(a)(2).

In determining Claimant's RFC, the ALJ thoroughly considered the relevant medical, opinion, and testimonial evidence concerning Claimant's impairments and the effect thereof on her ability to function, thus adequately satisfying her obligation to conduct a function-by-function analysis.   R. 18-21.   The only evidence of manipulative, exertional, and postural limitations appears in Dr. Dycus' May 22, 2012 opinions and Claimant's testimony.   R. 31-45, 182-84. However, as discussed above, the ALJ properly assigned little weight to Dr. Dycus' opinions and properly found Claimant's testimony concerning the severity of her impairments not credible.   *See supra* pp. 12-20.   Moreover, treatment notes from the relevant time period (R. 170, 175) and the portions of Claimant's testimony the ALJ found credible (e.g., her inability to work with water

and chemicals) support the ALJ's RFC determination.[13]   Accordingly, the Court finds that the

ALJ's RFC determination is supported by substantial evidence.

**V.       CONCLUSION.**

For the reasons stated above, it is **ORDERED** that:

1.       The final decision of the Commissioner is **AFFIRMED**; and

2.       The Clerk is directed to enter judgment in favor of the Commissioner and to close

the case.

**DONE** and **ORDERED** in Orlando, Florida on March 30, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Pamela Houston
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Office
3505 Lake Lynda Drive
Suite 300
Orlando, FL 32817-9801

---

[13] Although the record contains treatment notes postdating Claimant's DLI (R. 169, 171-72), this evidence, which does not relate back to the relevant period, is not pertinent to determining whether Claimant is eligible for DIB.   *See Robinson v. Astrue*, 235 F. App'x 725, 727 n.1 (11th Cir. 2007) (noting that evidence of disability dating after the DLI is not pertinent to a claim for DIB).